# UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **CHRISTOPHER SULLIVAN,** | 1:17-cv-00959-LJO-EPG |
| **Plaintiff,** | **MEMORANDUM DECISION AND ORDER DENYING DEFENDANTS' MOTION TO EXCLUDE EXPERT TESTIMONY AND GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (ECF No. 22)** |
| v. | |
| **COSTCO WHOLESALE CORPORATION, TRICAM INDUSTRIES, INC, and DOES 1 to 10,** | |
| **Defendants.** | |

## I. PRELIMINARY STATEMENT TO PARTIES AND COUNSEL

Judges in the Eastern District of California carry the heaviest caseloads in the nation, and this Court is unable to devote inordinate time and resources to individual cases and matters. Given the shortage of district judges and staff, this Court addresses only the arguments, evidence, and matters necessary to reach the decision in this order. The parties and counsel are encouraged to contact the offices of United States Senators Feinstein and Harris to address this Court's inability to accommodate the parties and this action. The parties are required to reconsider consent to conduct all further proceedings before a Magistrate Judge, whose schedules are far more realistic and accommodating to parties than that of U.S. Chief District Judge Lawrence J. O'Neill, who must prioritize criminal and older civil cases.

Civil trials set before Chief Judge O'Neill trail until he becomes available and are subject to suspension mid-trial to accommodate criminal matters. Civil trials are no longer reset to a later date if Chief Judge O'Neill is unavailable on the original date set for trial. Moreover, this Court's Fresno

Division randomly and without advance notice reassigns civil actions to U.S. District Judges throughout the Nation to serve as visiting judges. In the absence of Magistrate Judge consent, this action is subject to reassignment to a U.S. District Judge from inside or outside the Eastern District of California.

## II. **INTRODUCTION**

This case concerns Plaintiff's products liability claim against Defendants Costco Wholesale Corporation and Tricam Industries, Inc. ("Defendants"). Plaintiff initially filed this case in the Superior Court for the County of Fresno, and it was removed to this Court under diversity jurisdiction on July 18, 2017. ECF Nos. 1, 2. On June 29, 2018, Defendants filed the instant motion to exclude expert testimony and for summary judgment. ECF No. 22. Plaintiff filed an opposition on July 16, 2018. Defendants did not file a reply, and the Court deemed this matter suitable for decision on the papers under Local Rule 230(g) and deemed the mater submitted on July 26, 2018. ECF No. 27.

## III. **BACKGROUND**

The following facts are drawn from the separate statements of undisputed facts filed by the parties. ECF Nos. 22-2, 23-5. On January 2, 2016, Plaintiff fell while using a Model RM-SLA-3 3-foot Type II 225 lb Duty Rated aluminum step stool ("RM-SLA-3" or "step stool") and sustained injuries. ECF Nos. 22-2 ¶ 1; 23-5 ¶ 1. The step stool was designed, manufactured, marketed, and distributed by Tricam Industries, and sold by Costco. ECF Nos. 22-2 ¶ 3; 23-5 ¶ 3. Plaintiff purchased the step stool from Costco on June 23, 2013, and used it more than 20 times prior to his fall. ECF No. 22-2 ¶¶ 7, 12; ECF No. 23-5 ¶¶ 7, 12. Plaintiff did not experience any wiggle, wobble, or instability when using the RM-SLA-3 before his fall, and there was no pre-fall damage to the step stool. ECF No. 23-5 ¶¶ 13-14.

On January 2, 2016, Plaintiff set up the RM-SLA-3 on the concrete floor of his garage to examine his water heater for leaks. ECF No. 23-5 ¶¶ 15-16. Plaintiff placed the step stool so that the rear rails faced the water heater, with a door one or two feet to his left and the area to his right clear. *Id*. ¶ 19. He snapped the platform down on the rear support, and made sure that the platform was locked stably and securely on the rear support. *Id*. ¶¶ 17-18. Plaintiff climbed the RM-SLA-3 two to five times. *Id*. ¶

20. On the last climb, Plaintiff climbed to the top platform, where her stood for about two minutes before falling. *Id*. ¶¶ 21-22. Plaintiff does not recall what he was doing with his hands before the fall, but did not hear or see any portion of the RM-SLA-3 give way and the platform did not wiggle, wobble, or move. *Id*. ¶¶ 23-25. Plaintiff's left leg was injured in the fall, which Plaintiff believes was most likely from striking the RM-SLA-3. *Id*. ¶ 26.

Plaintiff's expert, R. Kevin Smith, prepared an expert report, in which he concluded that both rear rails of the RM-SLA-3 failed in tension on the outside fiber where a screw is drilled into the cross rail support for the RM-SLA-3's platform. *Id*. ¶ 2; ECF No. 22-9 at 4. He also concluded that the RM-SLA-3 was "defective in design and unreasonably dangerous." ECF No. 23-5 ¶ 29; ECF No. 23-6 ¶ 27.

## IV. LEGAL STANDARDS

### A. Expert Testimony

Federal Rule of Evidence ("Rule") 702 governs the admissibility of expert testimony. Under Rule 702, a proposed expert witness must first qualify as an expert by "knowledge, skill, experience, training, or education." Fed. R. Evid. 702. The proposed expert witness may then testify in the form of an opinion if: "(a) the expert's . . . specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." *Id.*

The trial court serves a special "gatekeeping" function with respect to Rule 702. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999). The trial court must make an initial assessment of the proposed expert testimony to ensure that it "rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993). In other words, the trial court must consider (1) whether the reasoning or methodology underlying the expert testimony is valid (the reliability prong); and (2) whether the reasoning or methodology can be applied to the facts in issue (the relevancy prong). *See id.* at 592-93.

To determine the reliability of expert testimony, the Supreme Court has identified four factors that a trial court may consider: "(1) whether the 'scientific knowledge . . . can be (and has been) tested'; (2) whether 'the theory or technique has been subjected to peer review and publication'; (3) 'the known or potential rate of error'; and (4) 'general acceptance.'" *Obrey v. Johnson*, 400 F.3d 691, 696 (9th Cir. 2005) (quoting *Daubert*, 509 U.S. at 593-94). These factors, however, are not exclusive. *See Kumho Tire*, 526 U.S. at 150 ("*Daubert* makes clear that the factors it mentions do *not* constitute a definitive checklist or test.") (emphasis in the original) (citation and internal quotation marks omitted). Rather, the trial court enjoys "broad latitude" in deciding how to determine the reliability of proposed expert testimony. *Id.* at 141-42. As to relevancy, the Supreme Court has explained that expert testimony is relevant if it assists the trier of fact in understanding evidence or determining a fact in issue in the case. *Daubert,* 509 U.S. at 591.

The proponent of the expert testimony carries the burden of proving its admissibility. Fed. R. Evid. 702, advisory committee's note (2000 amend.); *see Lust v. Merrell Dow Pharms., Inc.*, 89 F.3d 594, 598 (9th Cir. 1996). In the context of expert scientific testimony, the Ninth Circuit has explained that the proponent meets this burden by offering "some objective, independent validation of the expert's methodology" establishing that the expert's findings are based on "sound science." *Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d 1311, 1316 (9th Cir. 1995) ("*Daubert II*").

**B.** **Summary Judgment**

Summary judgment is proper if the movant shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. The moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). A fact is material if it could affect the outcome of the suit under the governing substantive law; "irrelevant" or

"unnecessary" factual disputes will not be counted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

If the moving party would bear the burden of proof on an issue at trial, that party must "affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). In contrast, if the non-moving party bears the burden of proof on an issue, the moving party can prevail by "merely pointing out that there is an absence of evidence" to support the non-moving party's case. *Id*. When the moving party meets its burden, the non-moving party must demonstrate that there are genuine disputes as to material facts by "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c).

In ruling on a motion for summary judgment, a court does not make credibility determinations or weigh evidence. *See Anderson*, 477 U.S. at 255. Rather, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id*. Only admissible evidence may be considered in deciding a motion for summary judgment. Fed. R. Civ. P. 56(c)(2). "Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment." *Soremekun*, 509 F.3d at 984.

## V. ANALYSIS

### A. Motion to Exclude Expert Testimony

Plaintiff offers the expert testimony of Mr. Smith to show that the RM-SLA-3 was defective. In response, Defendants advance the expert testimony of Mark Quan. Arguing that Mr. Smith is not qualified to give an expert opinion on stool or ladder design, his theories of defect and causation are merely speculation, that he relied on unreliable methodology to formulate his opinion, and that his explanation of the defect and causation are contradicted by Plaintiff's description of the accident, Defendants contend Mr. Smith's testimony should be excluded under Rule 702. ECF No. 22-1 at 6-7.

### 1. Mr. Smith's Qualifications

Defendants argue that, because Mr. Smith does not have any specialized expertise in ladder or step stool design and manufacturing, has not served on an American National Standards Institute ("ANSI") committee relating to ladders or step stools, and did not list any specific skills, knowledge, or experience regarding step stool design, he is not qualified to render an expert opinion in this matter. ECF No. 22-1 at 13-14.

Rule 702 does not require that an expert's qualifications be narrowly defined, and "contemplates a broad conception of expert qualifications." *Thomas v. Newton Intern. Enters.*, 42 F.3d 1266, 1269 (9th Cir. 1994). An expert does not need to possess official credentials or particularized expertise in the specific area of the dispute. *United States v. Garcia*, 7 F.3d 885, 889-90 (9th Cir. 1993). So long as a putative expert possesses reasonably sufficient qualifications in a field relevant to the subject matter, their expert testimony may be admitted. *See Casey v. Ohio Med. Prods.*, 877 F. Supp. 1380, 1383 (N.D. Cal. 1995) (finding a medical doctor qualified to opine on liver disease causation even though he is not a specialist in that field).

Mr. Smith has a bachelor of science degree in Engineering and a master's degree in Mechanical and Aerospace Engineering, and has completed additional coursework in failure damage/analysis and metallurgical analysis. ECF No. 23-4 at 3, 6. Since 1986, Mr. Smith has been a registered Professional Engineer in Illinois. *Id*. at 3. He is a member of several professional associations in the field of engineering, and has lectured on design analysis and product design for safety. *Id*. at 3, 5. Mr. Smith was employed professionally at Triodyne, Inc., as a mechanical engineer investigating consumer and industrial product-related accidents. *Id*. at 4. His work involved analyzing and testing the design and safety of products, including ladders, as well and engineering and design forensic analysis and evaluating human factor design considerations. *Id*. Mr. Smith is currently the president of R.K. Smith Engineering, Inc., a business that provides consulting services in mechanical, safety, and forensic engineering. *Id*. at 2. Mr. Smith has consulted in 12 or more matters involving ladder accidents. ECF

No. 23-3 ¶10. He operates a testing laboratory, and tests ladders using ANSI standards. *Id*. ¶11. Mr. Smith has acted as an expert witness in 22 cases over the past four years, one of which involved alleged design defects in ladders. *Id*. ¶ 12.

Mr. Smith has adequate education and relevant experience as a mechanical engineer and product safety analyst to perform an examination of the RM-SLA-3 and formulate an opinion as to the suitability of its design. Additionally, while Mr. Smith does not appear to have any special experience in step stool design, Defendants ignore the specific, if limited, ladder safety and design related experiences Mr. Smith references in both his CV and in his declaration. The extent of Mr. Smith's specialized knowledge in the specific field of ladder and step stool design goes to the weight afforded to his opinion by the trier of fact, not to its admissibility. Likewise, whether Defendants' expert, Mr. Quan is more qualified than Mr. Smith to render an expert opinion is a question of weight, and does not speak to whether Mr. Smith is suitability qualified as an expert. Accordingly, the Court finds Mr. Smith may be qualified as an expert in mechanical engineering and design safety analysis in this matter.

### 2. Mr. Smith's Methodology

Defendants dispute the facts relied upon and methodology used by Mr. Smith when he formulated his conclusion that the RM-SLA-3 was defective. Under Rule 702, once an expert is deemed qualified, the Court's gatekeeper function requires it to determine the relevance of the proffered testimony by considering whether it "will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a). Even if the testimony is relevant, it is admissible only to the extent that it "rests on sufficient facts or data" and is therefore reliable. Fed. R. Evid. 702(b).

#### a. Facts

First, Defendants argue that Mr. Smith ignored Plaintiff's uncontested statements in preparing his expert opinion. Specifically, Defendants point to Plaintiff's statements that he set up the RM-SLA-3 so that it was snapped on the rear support, that he climbed the RM-SLA-3 two to five times before falling, that on his last climb the step stool did not feel unstable, and that when he fell he was looking

straight ahead at the water heater and was not moving to either side or twisting. ECF No. 22-1 at 15. Defendants contend that these statements are not consistent with Mr. Smith's opinion that Plaintiff exerted side loading causing the rear rail of the RM-SLA-3 to fail, and that the side loading could have been caused by Plaintiff leaning to the side of setting up the RM-SLA-3 on an uneven surface or tilting it against an obstruction, and therefore do not "fit" the facts here. *Id*. at 15-16.

The "fit" requirement is based in Rule 702's specification that expert testimony "assist the trier of fact to understand the evidence or to determine a fact in issue" and is a question of relevance. Fed. R. Evid. 702(a); *Daubert II*, 43 F.3d at 1321 n.17 (citing *Daubert*, 509 U.S. at 591). Evidence is relevant and admissible if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action," Fed. R. Evid. 401, but may be excluded "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence," Fed R. Evid. 403.

This is not a situation where the proffered expert testimony is so divorced from the facts of the case that it would be of no consequence in determining the action. *Cf. General Elec. Co. v. Joiner*, 522 U.S. 136, 152 (1997) (Stevens, J., concurring in part and dissenting in part) (ruling excluding expert testimony that exposure to certain chemicals could cause lung cancer when there existed no evidence of any exposure to those chemicals should be upheld). The objected-to expert opinion here instead consists of alternative theories of causation. Experts are permitted to offer alternative theories of causation. *See, e.g.*, *John Morrell & Co. v. Local Union 304A of United Food and Commercial Workers, AFL-CIO*, 913 F.2d 544, 559 (8th Cir. 1990); *Walker v. Soo Line R. Co.*, 208 F.3d 581, 589 (7th Cir. 2000). Additionally, Mr. Smith's proposed theories as to how side loading may have occurred are not so inconsistent with Plaintiff's description of the accident that a jury would be misled were it to hear the testimony. There is a "sufficient nexus" between Plaintiff's accident description and Mr. Smith's theories such that a jury would be aided in determining the facts by considering the expert testimony.

*See Lauzon v. Senco Prods., Inc.*, 270 F.3d 681, 695 (8th Cir. 2001) (despite discrepancies between the plaintiff and the expert's account of events, a "sufficient nexus" existed between the two testimonies). Therefore, the Court determines that Mr. Smith's testimony is relevant and "fits" the facts of this case.

### b. **Testing Practices**

Next, Defendants take issue with Mr. Smith's testing practices, noting that he did not test the failed RM-SLA-3, did not test his proposed alternate design, ignored the relevant ANSI A14.2 testing requirements, and incorrectly performed a cantilever bending test using an exemplar step stool. ECF No. 22-1 at 16-17. Questions about the specific principles and methodology applies in formulating an expert opinion go to the reliability of the evidence. Relevant expert testimony is admissible only to the extent that it is "the product of reliable principles and methods." Fed. R. Evid. 702(c). In *Daubert*, the Supreme Court provided a list of factors which may be considered, but noted that the reliability inquiry is "a flexible one." 509 U.S. at 594-95. The Ninth Circuit has clarified that, when there is no evidence that testimony grew out of pre-litigation research or is not the type which is subject to peer review,

> the proponent of expert scientific testimony may attempt to satisfy its burden through the testimony of its own experts. For such a showing to be sufficient, the experts must explain precisely how they went about reaching their conclusions and point to some objective source—a learned treatise, the policy statement of a professional association, a published article in a reputable scientific journal or the like—to show that they have followed the scientific method, as it is practiced by (at least) a recognized minority of scientists in their field.

*Daubert II*, 43 F.3d at 1318-19. "Shaky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion." *Primano v. Cook*, 598 F.3d 558, 565 (9th Cir. 2010). A judge's duty is "to screen the jury from unreliable nonsense opinions, but not exclude opinions merely because they are impeachable." *Alaska Rent-A-Car v. Avid Budget Grp., Inc.*, 738 F.3d 960, 969 (9th Cir. 2013).

In preparing his report, Mr. Smith measured, inspected, and photographed the failed RM-SLA-3. ECF No. 23-4 at 8. He could not have reasonably tested the step-stool, as it was already damaged in the

accident. Mr. Smith reviewed Plaintiff's deposition transcript and his recorded statement, photographs of the failed RM-SLA-3, Defendants' discovery responses, and relevant ANSI standards. *Id.* at 8; ECF No. 23-3 ¶ 13. In addition to the tests prescribed by the ANSI standards on ladders, Mr. Smith felt it was important to perform alternative tests to gauge the rear rail loading strength of the RM-SLA-3. ECF No. 23-3 ¶ 16. Mr. Smith opined that the ANSI A14.2 testing standard is inadequate, as the test was intended for ladder types not designed to allow the user to stand on the top platform, and the test accordingly does not evaluate rear rail loading when a user is standing on the top platform. ECF No. 23-3 ¶ 16.

While Mr. Smith deviated from the ANSI testing standards, he did so for specific, articulated reasons which are pertinent to the facts of this case. He tested an exemplar step stool with the same duty rating as the RM-SLA-3, and noted design difference between the two models. ECF No. 23-4 at 12-13. Mr. Smith's reasons for not following ANSI standards may be questioned through cross-examination or other evidence, but this departure from testing standards does not fatally undermine the reliability of Mr. Smith's testimony. Mr. Smith also identifies a number of design changes which he believes would have improved the design of the RM-SLA-3, including "heavier cross sections with increased area moment of intertia and bracing," "[f]astening methods that reduce outer fiber stresses," and an increased base width, and identified other Tricam stepstools as alternative designs. *Id.* at 20. The Court concludes that Mr. Smith's opinion is sufficiently based on scientific, reproducible, and testable principles, and is therefore sufficiently reliable for admission under Rule 702.

Whether the techniques used by Mr. Smith to formulate his opinion were properly applied or the best options, as Mr. Quan's statements indicate, are questions best left for the jury. *Kumho*, 536 U.S. at 153 (where experts might reasonably disagree, "the jury must decide among the conflicting views of different experts, even though the evidence is 'shaky'"). Mr. Smith's techniques do not appear to be completely unfounded or not capable of being challenged by scientific method, nor is his opinion "so fundamentally unsupported that it can offer no assistance to the jury" that it must be excluded. *In re Viagra Prods. Liability Litig.*, 572 F. Supp. 2d 1071, 1078 (D. Minn. 2008). The Court finds that Mr.

Smith's methodology is reliable and his opinion is not inadmissible on that basis.

         **c.**      **Plaintiff's Medical Records**

Finally, Defendants argue that Mr. Smith failed to take Plaintiff's cardiovascular issues into account when formulating his opinion, and that Mr. Smith's testing methodology was therefore inconsistent with Plaintiff's testimony. ECF No. 22-1 at 17-18. Defendants contend that Plaintiff's cardiovascular history includes episodes of fainting, which should properly have been taken into account by Mr. Smith as an alternate theory of causation of the injury. *Id.* at 18. Without considering that history, Defendants argue, Mr. Smith's expert opinion is incomplete and misleading. *Id*. Plaintiff argues that the medical records are inadmissible, as they are not properly authenticated.

Federal Rule of Evidence 901(a) requires "authentication or identification as a condition precedent to admissibility." Before any evidence is admitted, a foundation must be laid "by evidence sufficient to support a finding that the matter in question is what its proponent claims." Fed. R. Evid. 901(a). "[D]ocuments which have not had a proper foundation laid to authenticate them cannot support a motion for summary judgment." *Canada v. Blain's Helicopters, Inc.*, 831 F.2d 920, 925 (9th Cir. 1987). Plaintiff may be correct in asserting that the medical records attached to Defendants' motion for summary judgment are not admissible, as there is no accompanying authenticating statement apart from a declaration by Defendants' attorney that the records are a "true and correct copy of [P]laintiff's composite medical records." ECF No. 22-3 at 2. Counsel's affidavit is not sufficient to authenticate a document under Federal Rule of Evidence 901, as Defendants' counsel lacks personal knowledge of the medical records. *See Orr v. Bank of America, NT & SA*, 285 F.3d 764, 774 (9th Cir. 2002) (statement in counsel's affidavit that an exhibit was a true and correct copy of a deposition not sufficient to authenticate). While the records could be authenticated under Federal Rule of Evidence 901(b)(4) by their "[a]ppearance, contents, [and] substance, . . . taken in conjunction with circumstances," as Plaintiff's name appears on the records and they are consistent with other authenticated evidence such as Plaintiff's deposition transcript, the Court sees no need to engage in such an analysis as the existence of

the records would not render Mr. Smith's testimony inadmissible in any case.

As Defendants point out, "'an expert need not rule out every potential cause in order to satisfy *Daubert*' as long as the expert's testimony 'address[es] obvious alternative causes and provide[s] a reasonable explanation for dismissing specific alternate factors identified by the defendant.'" ECF No. 22-1 at 17-18 (quoting *Stanley v. Novartis Pharm Corp.*, 11 F. Supp. 3d 987, 1001 (C.D. Cal. 2014)). The potential cause identified by Defendants, that Plaintiff may have fainted and lost his balance, ECF No. 22-1 at 18, may constitute an explanation as to why Plaintiff fell. Plaintiff is not, however, offering Mr. Smith's testimony as either an expert medical witness or as a percipient witness to the accident. Mr. Smith's range of expertise, and therefore his expert testimony, is pertinent to the design of the RM-SLA-3, how it may have failed, and its alleged manufacturing and design defects. While Plaintiff's fainting may explain why side loading occurred, it is not an alternative cause for the step stool's failure. Rather, it is a potential explanation for Plaintiff's fall or how the side loading identified by Mr. Smith occurred.

Even if fainting were somehow an alternative cause for the RM-SLA-3's failure, the issue to which Mr. Smith's proposed testimony is directed, alternative causes "affect the weight that the jury should give the expert's testimony and not the admissibility of that testimony" unless the expert can offer no reasonable explanation for rejecting an opponent's explanation. *Heller v. Shaw Indus., Inc.*, 167 F.3d 146, 157 (3d Cir. 1999). Moreover, there is no indication that Defendants ever raised fainting as a potential alternate factor prior to this motion for summary judgment. Experts cannot be expected to anticipate and respond in their initial reports to every potential factor an opposing party might raise. The failure to peremptorily rebut Defendants' explanation of Plaintiff's fall does not make Mr. Smith's testimony inadmissible. Defendants' alternative explanations and any response thereto more appropriately go to the weight that a jury may ascribe to Mr. Smith's testimony. For the foregoing reasons, Defendants' motion to exclude the testimony of Mr. Smith is DENIED.

**B.      Summary Judgment**

Defendants seek summary judgment on Plaintiff's claims for breach of express and implied

warranties. ECF No. 22-1 at 22. Defendants argue that Plaintiff has not introduced any evidence of an express warranty. *Id.* Additionally, Defendants content that Plaintiff has not established the existence of an implied warranty as he has not identified any particular purpose, other than its ordinary use, for which he purchased the RM-SLA-3, nor has he provided any evidence that such purpose was communicated to the seller. *Id*. Plaintiff did not address this argument in his opposition, and careful review of both parties' lists of disputed and undisputed facts show no mention of either an express or implied warranty. Because Defendants have "point[ed] out that there is an absence of evidence" as to this claim, *Soremekun*, 509 F.3d 984, and Plaintiff has failed to meet his burden of rebuttal, there is no genuine dispute of material fact. Defendants are entitled to summary judgment on this single claim.

Defendants also argue that they are entitled to summary judgment on all remaining claims. ECF No. 22-1 at 19. Defendants' sole argument on this point is that, if Plaintiff offers no admissible expert testimony regarding defects or reasonable design and manufacturing precautions, he cannot prove required elements of his product defect and negligent manufacturing and design claims. *Id*. at 19-22. As the Court has denied Defendants' motion to exclude Mr. Smith's expert testimony, Defendants' motion for summary judgment on all claims, except for the express and implied warranty claims, fails.

### VI. CONCLUSION AND ORDER

For the foregoing reasons, Defendants' motion for summary judgment is GRANTED as to Plaintiff's claim for breach of express and implied warranties. Defendants' motion to exclude the testimony of Mr. Smith and for summary judgment on all other claims is DENIED.

IT IS SO ORDERED.

Dated: **August 23, 2018**  /s/ Lawrence J. O'Neill
UNITED STATES CHIEF DISTRICT JUDGE